UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PHYLLIS ANN JOHNSON,        )
        )
        Plaintiff,        )
        )      NO. 1:08-CV-67
v.        )      *Lee*
        )
WAL-MART STORES EAST, L.P.,        )
        )
        Defendant.        )

## MEMORANDUM AND ORDER

### I.    Introduction

Before the Court is the motion of Defendant, Wal-Mart Stores, East, L.P. ("Defendant"), for

a summary judgment on the premises liability claim brought by Plaintiff, Phyllis Ann Johnson [Doc.

16]. Plaintiff has filed a response in opposition to Defendant's motion [Doc. 19], which is now ripe

for review. For the reasons stated herein, Defendant's motion for a summary judgment [Doc. 16]

will be **GRANTED** and this action will be **DISMISSED WITH PREJUDICE**.

### II.    Background

Plaintiff brought a slip-and-fall claim governed by the substantive law of Tennessee against

Defendant. The slip-and-fall incident at issue occurred on Saturday, February 3, 2007, in

Defendant's store located on Highway 153 in Hixson, Tennessee ("Wal-Mart Store") [Doc. 16-2,

Plaintiff's deposition at 54, 57]. Plaintiff was working at the Wal-Mart Store as a product

demonstrator for a third-party vendor on the day at issue [*id.* at 21, 22]. At approximately 3:00

P.M., Plaintiff took a break to use the restroom [*id.* at 57].[1]  There were four stalls in the ladies'

restroom at issue [*id.* at 67].  The toilet in the first stall had not been flushed and had feces in it, the

toilet in the second stall had urine all over it, and the third stall was occupied [*id.*].  Plaintiff used

the fourth stall, the handicap stall, because it "was the only one open," not due to any handicap [*id.*

at 67, 78].

When Plaintiff entered the handicap stall and prior to her use of the toilet, Plaintiff saw both

dry and wet toilet paper on the floor of the stall around the base of the toilet, "literally touching the

toilet." [*Id.* at 73].  When asked if the toilet paper she saw on the floor of the handicap stall was dry,

Plaintiff responded:  "I, honest to God, at this moment I cannot remember." [*Id.* at 71].  When asked

if there was any liquid on the floor of the stall, Plaintiff responded, "[t]he wet toilet paper." [*Id.* at

72].

Plaintiff sat down and used the facility [*id.* at 73].  When she finished, Plaintiff stood up and

fixed her clothing [*id.* at 74].  After she was finished fixing her clothes, Plaintiff turned around and

faced the wall behind the toilet in order to press the button to manually flush the toilet because it had

failed to flush automatically [*id.* at 74].  Plaintiff testified:

Q       So at this point you're facing the wall behind the toilet, correct?

A       Yes.

Q.      And then you lean over and push the black button –

A       Yes.

Q       – correct? And then what happens?

---

[1]  There were two ladies' restrooms located in the Wal-Mart Store and Plaintiff used the
ladies' restroom at the rear of the building [*id.* at 60].  Plaintiff could have used either of the two
restrooms [*id.* at 65].

A       That's – the next thing I knew I was just – my feet were in the air and I was just straight back in the floor.

Q       Okay.  How did that happen?

A       It happened so fast I couldn't tell you to save my life.  I . . .

Q       Now, you've told me that upon entering the stall there you could see some dry toilet paper around the toilet and you said there was some wet toilet paper that was touching the toilet up close to it, correct?

A       The dry toilet paper is just all around the sides, yes.

Q       Okay.  On the sides of the toilet was the dry toilet paper?

A       The best I can remember.

Q       Okay.  There was no water on the floor anywhere else that you could see?

A       No, that I remember.

Q       Okay.  When you leaned over to push the black button to flush the toilet, was either one of your feet in contact with the wet toilet paper that was up next to the toilet?

A       I couldn't tell you.

[*Id.* at 74-76].  Plaintiff also testified:

Q       And you can't tell me that either of your feet ever came into contact with that toilet paper before the accident happened?

A       Can't swear to it.

[*Id.* at 80].  When asked how the accident occurred, Plaintiff responded:

> Just like I told you before, I bent to flush the toilet and my feet flew out from under me and I was back flat on the floor.  It happened very fast.
>
> . . .

I hadn't pushed the button. I was bent over to push the button and that's – and anything else I can't tell you. My feet flew up out from under me and I was on my back. It happened that fast.

[*Id.* at 82]. Plaintiff was then asked

Q       [I]s it your contention in this case that you slipped or tripped on toilet paper?

A       Yes.

Q       Was the toilet paper that you slipped or tripped on wet or dry?

A       I don't know which one it was. There was both in the floor.

Q       But you can't tell me, as you stood there reaching for the black button, whether your feet were even in contact with any toilet paper, can you?

A       Yes.

Q       Okay. Was the toilet paper that your feet was in contact with wet toilet paper or dry toilet paper?

A       I don't know.

[*Id.* at 85].

Plaintiff does not know which foot slipped when she fell [*id.* at 89]. Other than the wet toilet

paper she described, she acknowledged there was no water on the floor of the stall [*id.*].

Plaintiff was asked during her deposition:

Q       Okay. In terms of anything in that stall that could have caused you to slip or trip, whatever that was, it was visible to you when you entered the stall, wasn't it?

A       There was toilet paper in the floor, yes.

Q       There isn't anything else that was in the stall that you claim caused you to fall, is there?

A       No.

4

[*Id.* at 98].

Plaintiff had used the same restroom earlier in the day [*id.* at 61].  With respect to the condition of the restroom, Plaintiff testified:

A      Well, it always has toilet paper and paper towels all over the floor, almost always.

Q      All right.  That's the usual condition of the rest room is what you're telling me, right?

A      Yes.

Q      Now, tell me, do you have a recollection, an independent memory of what the condition of the rest room was when you used it earlier that day?  Do you know that it had paper on the floor or is that simply a guess?

A      I, I honestly - - I know there was paper towels, I remember that part, in the floor.  And I always wash my hands and, you know, there's always water and soap around the sinks.

Q      Okay.  Let's talk about that.  First of all, is that an actual recollection on your part of that particular visit, the earlier visit on the day of the accident, or is that simply a generalization of the way it usually is?

A      That is a usual – it's usually the way it is.  That's all I remember.  I'm sorry.

. . .

Q      So your testimony is that usually there is paper towels near the sinks or on the floor, and around the sinks there is usually some water?

A      Almost always.  And the toilet paper, I don't think I've ever been in one bathroom that the toilet paper was not in the floor.

Q      When you say that there's usually water around the sink area, do you mean on the sink there's water kind of splattered around or that there's water on the floor near the sinks?

A      Both

Q      Okay.  But you don't remember whether these conditions were actually there the first visit that you made to the rest room on the day

5

of the accident?

A       No, I don't remember.

Q       Okay. Do you remember on that first visit to the rest room on the day
of the accident which stall you used?

A       No, I don't.

[*Id.* at 61-63].

Plaintiff also testified that when she first walked into the restroom, prior to using the facility

and falling, nothing struck her as unusual about the restroom, and that "it was just like it always is."

[*Id.* at 68]. Plaintiff was also asked whether, after using the same restroom earlier in the day, she

made a complaint to anyone at the Wal-Mart Store concerning the condition of the restroom [*id.* at

78-79]. She responded:

A       There was just a couple – you know, I told you there was a couple
ladies in there, and I just, you know, made the comment that this
place is nasty.

Q       Okay. The two ladies were in there when you went in to use the rest
room –

A       Right

Q       when the accident occurred?

A       Right.

[*Id.* at 79]. When asked to clarify if she complained after her first visit to the same restroom earlier

in the day, Plaintiff said: "I know I said something. I'm trying to remember if I said something to

one of the ladies. I don't remember." [*Id.* at 79].

Plaintiff was also asked:

Q       And that toilet paper was clearly visible to you when you first walked
into the stall?

6

A       Yes.

Q       There wasn't anything wrong with the light in the rest room that day, was there?

A       Not to my knowledge.

Q       There wasn't anything hidden in that stall that you couldn't see, was there?

A       Not to my knowledge.

[*Id.* at 86].

Plaintiff was further asked:

Q       All right. And before you stood up to fix your clothing after you had used the facility, of course, you knew that toilet paper was there, didn't you?

A       Yes.

Q       You didn't make any effort to move your feet to avoid stepping on it?

A       I just, I didn't. I had to go to the bathroom.

Q       So you did not make any effort to avoid stepping on the toilet paper that you knew was there?

A       I just didn't pay attention.

Q       That's not my question. You didn't make any effort –

A       No.

Q       - - to avoid it, did you?

A       No.

Q       Do you know how long that particular toilet paper had been on the floor?

A.      No.

7

[*Id.* at 90-91].

**III.    Analysis**

**A.    Parties' Positions**

Defendant seeks a summary judgment on Plaintiff's premises liability claim asserting:

> The Plaintiff has no idea what caused her to fall.  Further, Plaintiff has admitted under oath that she was aware of all of the toilet paper on the floor of the stall before she fell, and that there were no hidden hazards in the stall. [Defendant] avers that the Plaintiff cannot prove what caused her to fall.  Further, even if Plaintiff were to assert that she slipped because of toilet paper on the floor, she was fully aware of the toilet paper and could easily have avoided it before the accident. [Defendant ] avers that Plaintiff cannot prove there was any hazard in the restroom stall that caused her accident.  Alternatively, [Defendant] avers that the record affirmatively shows that Plaintiff was at least 50% at fault with respect to her accident, which bars any recovery by her.  Accordingly, [Defendant] is entitled to judgment as a matter of law.

[Doc. 17 at 1-2].  Defendant also contends:

> [t]he only hazard of which the Plaintiff complains . . . was toilet paper on the floor of the handicap stall . . . . Plaintiff's deposition testimony as to whether her feet ever even came into contact with the toilet paper was completely contradictory and provides no credible evidence to support her claim. . . Plaintiff has admitted that there was nothing hidden in the stall she used, that the toilet paper was clearly visible to her upon her entry into the stall, and that she made no effort to avoid the toilet paper . . . before the accident.  Under these circumstances, as a matter of law, [Defendant] clearly did not have any knowledge of the alleged hazard superior to the knowledge of Plaintiff herself, and owed no duty to the Plaintiff with respect to the toilet paper on the floor of the stall.  As a matter of law, Plaintiff was at least 50% responsible for her own accident . . . .

[*Id.* at 7-8].

Plaintiff asserts Defendant's motion is premised on its assertion she does not know how her

fall occurred, but Plaintiff asserts "it is much more likely than not that the fall and her resulting

8

injuries occurred because of Defendant's negligence in maintaining its restrooms."[Doc. 19 at 1]. Plaintiff states she "believes she fell on wet toilet paper when she leaned over to push the manual flush button mounted on the wall behind the toilet." [Doc. 19 at 3]. Plaintiff asserts there is a genuine issue of material fact as to whether Defendant's negligence caused her fall and summary judgment is not an appropriate mechanism to determine her comparative fault, if any, as this issue involves a question of fact which should be resolved by the jury [*id.*].

### B.     Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

### C.    Premises Liability

Under Tennessee law, in order to establish a claim of negligence "a plaintiff must prove: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate cause." *Farmer v. Wal-Mart Stores East, L.P.*, No. 1:05-CV-299, 2006 WL 2883384, *4 (E.D. Tenn. Oct. 10, 2006) (citing *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996)).  Where a negligence claim is made in the premises liability context, "Tennessee courts have stated a business owner owes a duty of reasonable care under all the attendant circumstances to all persons who come upon his property with his consent, express or implied." *Id.* (citing *Hudson v. Gaitan*, 675 S.W.2d 699, 703-04 (Tenn. (1984)).  This duty of care is breached by a business owner "when it allows a dangerous condition or defect to exist on the premises if that condition or defect was created by the owner, operator or his agent; or if the condition is created by someone else, when the business owner had actual or constructive notice that the dangerous condition or defect existed prior to the injury." *Id.* (quoting *Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 858 (6th Cir. 2003); *Hardesty v. Serv. Merchandise Co. Inc.*, 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997)).  "[I]n order to prevail in a premises liability action, the plaintiff must show that 'the condition (1) was caused or created by the owner, operator, or his agent or (2) if the condition was created by someone other than the owner, operator, or his agent, there must be actual or constructive notice on the part of the owner or operator that the condition existed prior to the accident.'" *Id.* (quoting *Trebing v. Fleming Companies, Inc.*, 40 S.W.3d 42, 46 (Tenn. Ct. App. 2001)).

Where liability is predicated on constructive knowledge of the defendant, the proof must show the dangerous or defective condition existed for such a length of time that the defendant knew,

or in the exercise of ordinary care should have known, of its existence. *Ogle v. Winn-Dixie Greeneville, Inc.*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995). "A plaintiff can also prove constructive notice through 'a pattern or conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence.'" *Bowling v. Wal-Mart Stores, Inc.*, 233 F. App'x 460, 467 (6th Cir. 2007) (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 765-66 (Tenn. 2004)). "The recurring conduct or continuing condition must be specific to the location where the incident at issue occurred . . . notice of a general or continuing condition in one area of the premises does not necessarily support a finding of constructive notice as to another area." *Id.* at 467-68 (citing *Blair*, 130 S.W.3d at 767; *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. Appl. 1996); *Tinsley v. Wal-Mart Stores, Inc.*, 155 F. App'x 196, 198 (6th Cir. 2005)).

"When there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit [a] jury to speculate on these vital elements." *Id.* (citing *Paradiso v. Kroger Co.*, 499 S.W.2d 78 (Tenn. Ct. App. 1973); *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271 (Tenn. Ct. App. 1987)). "A case does not have to be submitted to a jury where there is a mere spark or glimmer of evidence. There must be some evidence of a material and substantial nature." *Id.* (quoting *Sadek v. Nashville Recycling Co.*, 751 S.W.2d 428, 431 (Tenn. Ct. App. 1988)). "[T]here is no liability for the results of an accident that could not have been foreseen by a reasonably prudent person and . . . 'negligence is not to be presumed by the mere happening of an injury or accident.'" *Friedenstab v. Short*, 174 S.W.3d 217, 219 (Tenn. Ct. App. 2004) (quoting *Brackman v. Adrian*, 472 S.W.2d 735, 739 (1971)).

Defendant asserts it had no knowledge of the alleged hazard – the toilet paper at the base of the toilet in the handicap stall being used by Plaintiff – that was superior to Plaintiff's knowledge

11

and, therefore, owed no duty to the Plaintiff [Doc. 17 at 8]. Defendant also asserts Plaintiff cannot establish a causal connection between the alleged hazard and her fall because her deposition testimony concerning whether her feet ever came into contact with the toilet paper is completely contradictory and provides no credible evidence in support of her claim [*id.* at 7-8].

Plaintiff responds she "believes she fell on wet toilet paper when she leaned over to push the manual flush button mounted on the wall behind the toilet" in the handicap stall [Doc. 19 at 3-4]. Plaintiff asserts she "would show that it is much more likely than not that [her] fall and . . . resulting injuries occurred because of Defendant's negligence in maintaining its restroom, and that there is a genuine issue of material fact as to whether Defendant's negligence caused her fall." [*Id.* at 1].

As noted, "[i]n a negligence case, the plaintiff has the burden of proving that the defendant owed the plaintiff a duty, that the defendant breached that duty and that the plaintiff was injured as a result of the breach of the duty." *Keene v. Cracker Barrel Old County Store, Inc.*, 853 S.W.2d 501, 503 (Tenn. Ct. App. 1992), *appeal denied* (1993). Plaintiff claims Defendant was negligent in failing to maintain the restroom, that such negligence resulted in toilet paper being on the floor of the handicap stall, and there was a causal connection between the toilet paper and her fall. Plaintiff testified she saw both wet and dry toilet paper on the floor of the handicap stall located either at the base of or around the sides of the toilet. Plaintiff testified, however, that when she leaned over to push the manual button to flush the toilet, "[i]t happened so fast I couldn't tell you to save my life." [Doc. 16-2 at 75]. When specifically asked whether either of her feet came into contact with the wet toilet paper when she leaned over to push the manual flush button, Plaintiff testified, "I couldn't tell you." [*Id.* at 75-76]. When asked whether her feet came into contact with toilet paper before she fell, Plaintiff testified she "[c]an't swear to it." [*Id.* at 80]. When asked how

12

she fell, Plaintiff responded, in pertinent part, "I was bent over to push the button and that's – and anything else I can't tell you." [*Id.* at 82]. Plaintiff contends she slipped or tripped on toilet paper, but she acknowledged she does not know whether the toilet paper was wet or dry or whether her feet were in contact with either wet or dry toilet paper at the time she leaned over to press the manual flush button [*id.* at 85]. There were no other witnesses to Plaintiff's fall in the handicap stall.

Although Plaintiff contends she fell when she leaned over to press the manual flush button behind the toilet and her foot, or feet, came into contact with toilet paper, either wet or dry, she acknowledged she cannot state whether her foot, or feet, came into contact with wet or dry toilet paper and acknowledged she cannot testify as to the cause of her fall. Assuming for the sake of argument, however, that Plaintiff's contention she slipped and fell when her foot, or feet, came into contact with either wet or dry toilet paper constitutes probative evidence as to the cause of her fall – as opposed to a mere statement of her belief as to the cause of her fall – under Tennessee law, "[t]wo sworn inconsistent statements by a party are of no probative value in establishing a disputed issue of material fact." *Friendstab v. Short*, 174 S.W.3d 217, 223 (Tenn. Ct. App. 2004) (citing *Price v. Becker*, 812 S.W.2d 597 (Tenn. Ct. App. 1991)).

As the only witness to her slip and fall inside the handicap stall, Plaintiff admits she cannot testify as to the cause of her fall or even whether her foot or feet came into contact with either the wet or dry toilet paper on the floor, but she seeks to permit a jury to speculate that she must have slipped and fallen on either the wet or dry toilet paper because she observed no other potential cause for her fall. In Tennessee, however, a "jury may not speculate as to the cause of [a] plaintiff's fall when one is not shown, nor may it speculate between two equally probable causes . . . ." *Martin v. Washmaster Auto Center, U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996).

13

Defendant also argues it is entitled to summary judgment because it had no knowledge, *i.e.*, actual or constructive notice of the alleged hazard, *i.e.*, the wet or dry toilet paper at the base of the toilet in the handicap stall, that was superior to Plaintiff's knowledge of the alleged hazard [Doc. 17 at 8]. Plaintiff admitted she did not know how long any of the toilet paper had been on the floor of the handicap stall. Although Plaintiff testified there were almost always paper towels and toilet paper on the floor of that ladies' restroom, when pressed about the usual state of that particular restroom, Plaintiff testified she generally saw paper towels around the sinks, or sink area, of the restroom. Plaintiff, however, did not testify, and has not asserted, she observed any paper towels in the handicap stall at the time of her fall. Further, although Plaintiff testified that at the time she used the restroom earlier in the day, and she may have commented to two other ladies who were using the restroom at the time of the accident that the place was "nasty," she does not remember complaining to Defendant about the state of the restroom prior to her fall.

Plaintiff has presented no evidence Defendant had actual notice of the toilet paper at the base of the toilet in the handicap stall, nor has Plaintiff presented any evidence to establish constructive notice based upon either a pattern of conduct, a recurring incident, or a general or continuing condition indicating the existence of the alleged hazard. The record is devoid of any evidence there had previously been an accumulation of toilet paper at the base of the toilet in the handicap stall and the record also lacks evidence that anyone had ever slipped and fallen, or even complained of slipping or falling, on either wet or dry toilet paper in that restroom, or any ladies' restroom at that Wal-Mart Store. Significantly, Plaintiff admitted in her deposition she had no idea how long any of the toilet paper, wet or dry, had been on the floor of the stall of the ladies' restroom.

In an analogous case, *Ogle v. Winn-Dixie Greeneville, Inc.*, 919 S.W.2d 45 (Tenn. Ct. App.

14

1993), the plaintiff alleged she slipped and fell on a wet and slippery floor in the restroom of a store operated by the defendant. *Id.* The plaintiff asserted on appeal the condition in the restroom had existed long enough that the defendant should have known of it. *Id.* at 46. In affirming the trial court's grant of summary judgment to the defendant on the issue of constructive notice, the Tennessee Court of Appeals summarized the evidence as follows:

> The only evidence presented both for and against the motion for summary judgment was the deposition of the plaintiff . . . [The plaintiff] testified by deposition that she slipped on some substance on the floor in the ladies' restroom and that her clothes were damp after the fall. She further testified that she did not know how the substance got there nor how long it had been there.
>
> There were no witnesses to the accident and no direct evidence that any employee of the appellee had any knowledge of a substance being on the floor . . . .
> . . .
> The appellants insist on this appeal that the presence of [an] "extremely large number of paper towels indicated that more likely than not a substantial period of time had elapsed since the last inspection or cleaning of the restroom . . . ." appellants further argue that the obvious and most reasonable inference from the foregoing evidence is that the defendant failed to perform its duty to inspect the premises and keep them in a reasonably safe condition. We respectfully disagree . . . .
>
> The accumulation of paper towels is totally insufficient to demonstrate that the defendant failed to inspect the premises. . . .

*Id.* at 47-48. Rejecting the plaintiff's argument as to constructive knowledge, the court stated: "When there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements." *Id.* at 48.

In the instant matter, Plaintiff testified there usually was an accumulation of paper towels in the sink area of the ladies' restroom. However, any accumulation of paper towels in the sink area of the restroom was unrelated to Plaintiff's fall in the handicap stall of the restroom. Moreover,

15

based upon Plaintiff's own admission during her deposition, there is no evidence as to when the allegedly dangerous condition – the presence of either the wet or dry toilet paper on the floor of the handicap stall – came about.

In another similar case applying Tennessee law, *Martin v. Wal-Mart Stores, Inc.*, 159 F. App'x 626 (6th Cir. 2005), the plaintiff slipped and fell in a puddle of water while shopping. *Id.* at 627. After falling, the plaintiff saw a puddle of clear liquid on the floor, approximately six or seven inches wide, which she believed was water. *Id.* The district court granted summary judgment for the defendant finding it had no actual or constructive notice of water on the floor where plaintiff fell. *Id.* On appeal, the Sixth Circuit upheld the district court's grant of summary judgment, holding the plaintiff could not establish constructive notice because the plaintiff had acknowledged in her deposition testimony she did not know how long the floor had been wet prior to her fall and had presented no evidence that water had been on the floor for such a length of time the store employees should have become aware of it. *Id.* at 628. The Sixth Circuit also held the plaintiff could not establish constructive notice by showing a pattern of conduct, recurring incident, or general or continuing condition indicating the existence of a dangerous condition, because there was no evidence water, or other fluids, repeatedly dripped and/or spilled in the area of the store where the plaintiff fell. *Id.* at 628-29.

Here, Plaintiff has admitted she does not know how long either the wet or dry toilet paper was at the base of the toilet, she has not presented any evidence the wet or dry toilet paper was present at the base of the toilet in the handicap stall for such a length of time that Defendant's employees should have been aware of it, and she has not presented evidence the accumulation of wet or dry toilet paper at the base of the toilet in the handicap stall was a continuing or recurrent problem

such that Defendant should have become aware of it. Although Plaintiff characterized that particular ladies' restroom as "nasty" based upon her prior use of it and stated there generally was paper towels accumulated in the sink area of the restroom, paper towels in the sink area of the restroom played no part in Plaintiff's slip and fall in the handicap stall. Plaintiff has failed to show there is a genuine issue of material fact as to Defendant's superior knowledge, *i.e.*, that Defendant had actual or constructive knowledge of the accumulation of wet or dry toilet paper at the base of the toilet in the handicap stall. Moreover, even assuming *arguendo* Plaintiff could establish constructive knowledge on the part of Defendant, Plaintiff also has failed to show a genuine issue of material fact because there is a complete absence of evidence in the record that Plaintiff's slip and fall in the handicap stall of the ladies' restroom was causally connected to the presence of the accumulated wet and dry toilet paper at the base of the toilet.

Even when the evidence is viewed in the light most favorable to Plaintiff and she is given the benefit of all reasonable inferences drawn from the evidence, there is a complete lack of evidence to support a finding that the alleged hazard on the floor of the handicap stall restroom caused Plaintiff to fall. Plaintiff has failed to show there is a genuine issue of material fact given the dearth of evidence on a critical issue of Plaintiff's premises liability claim on which she would bear the burden of proof at trial. Therefore, Defendant is entitled to summary judgment as a matter of law on Plaintiff's claims.

**D.     Comparative Fault**

The Court will also address the issue of comparative fault. In *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), the Supreme Court of Tennessee, "adopted a system of modified comparative fault by which a plaintiff who is less than fifty percent (50%) at fault may recover

17

damages in an amount reduced by the percentage of fault assigned to the plaintiff." *Ali v. Fisher*, 145 S.W.3d 557, 561 (Tenn. 2004) (citing *McIntyre*, 833 S.W.2d at 57). Under Tennessee law, "in a vast majority of cases, the comparison and allocation of fault is a question of fact to be decided by the finder-of-fact, that is the jury or the trial court sitting without a jury." *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, *6 (Tenn. Ct. App. Jan. 28, 2002) (citing *Brown v. Wal-Mart Discount Cities*, 12 S.W.3d 785, 789 (Tenn. 2000); *Turner v. Jordan*, 957 S.W.2d 815, 824 (Tenn. 1997); *Prince v. St. Thomas Hosp.*, 945 S.W.2d 731, 735 (Tenn. Ct. App. 1996)). "The task of comparing and allocating fault may be taken from the jury only when it can be determined beyond question (or alternatively, when reasonable minds cannot differ) that the plaintiff's fault is equal to or greater than the defendant's." *Id.* (citing *Staples v. CBL Assoc., Inc.*, 15 S.W.3d 83, 91-92 (Tenn. 2000); *Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn. 1994)). Although a disputed question of comparative fault is generally submitted to a jury, such a question can also be properly raised using a motion for summary judgment. *Id.* (quoting *Coln v. City of Savannah*, 966 S.W.2d 34, 44 (Tenn. 1998); *Norris v. Pruitte*, No. 01A01-9709-CV-00506, 1998 WL 1988563, *3 (Tenn. Ct. App. Aug. 24, 1998)).

In a negligence case, "[i]f the defendant has plead the affirmative defense of the plaintiff's comparative fault, the reasonableness of the plaintiff's conduct in confronting a risk should be determined under the principles of comparative fault." *Staples*, 15 S.W.3d at 91 (citing *Perez v. McConkey*, 872 S.W.2d 897, 905 (Tenn. 1994)). "If the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that her fault was equal to or great[er] than that of the defendant's, summary judgment in the defendant's favor may be granted." *Id.* (citing *Coln*, 966 S.W.2d at 44).

Defendant asserts it is entitled to a summary judgment on Plaintiff's premises liability claim based upon the Tennessee law of comparative fault because, as a matter of law, Plaintiff was at least 50 percent responsible for her own accident and, therefore, cannot recover [Doc. 17 at 8]. Defendant asserts:

> [t]here is no dispute that the Plaintiff was in the restroom stall long enough to utilize the facility and fix her clothing afterwards. There is no dispute that Plaintiff saw, immediately upon her entry into the stall and well before her accident, all of the toilet paper on the floor of the store. There is no dispute that Plaintiff had the opportunity to avoid the toilet paper on the floor of the stall, either by simply moving it out of her way with her foot, stepping over it, or moving to the side of the toilet to push the manual-flush button. Plaintiff chose to do none of these things, any one of which would have prevented her accident, even assuming that she fell as a result of the toilet paper on the floor, which she cannot prove in any event. Plaintiff was far more than 50% at fault for her own accident . . . . By her own admission, she had as much knowledge about the condition of the restroom stall she used as [Defendant] . . . and she had more recent knowledge – she was the last person before her accident to see the condition of the restroom stall.

[*Id.* at 9].

In *Berry v. Houchens Market of Tennessee, Inc.*, 253 S.W.3d 141 (Tenn. Ct. App. 2007), the plaintiff slipped and fell in a parking lot near a market. *Id.* at 143. Plaintiff sued the defendant market and the defendant owner of the parking lot. *Id.* The defendants filed motions asserting several grounds for a summary judgment and, in particular, the defendant parking lot owner asserted, *inter alia*, that plaintiff's negligence exceeded its own. *Id.* The trial court granted the defendants' motions for summary judgment and the reviewing court affirmed the decision. *Id.* Specifically, the reviewing court held the trial court properly granted the aspect of the defendant parking lot owner's motion which sought a summary judgment on the basis of plaintiff's liability, because based on her deposition testimony and the principles of comparative fault under Tennessee law, plaintiff was fifty

19

percent or more at fault for her accident and injuries. *Id.* at 148. The *Berry* court stated:

> In this case plaintiff testified she got out of the car on the driver's side, closed the door and started walking slowly around the car. Her explanation for not seeing the oil until she was lying in it was that she was looking straight ahead and that she never looks down when she is walking. According to her testimony, she slipped and fell into a considerable sized puddle of oil, not just a spot or two or oil . . . . The puddle was large enough to soak the entire back side of her body and the back of her head. She described the oil as "dark black" and stated that the oil, which was darker than the gray surface of the parking lot, was clearly distinguishable from the surface of the lot. Like the plaintiff in *Easley v. Baker*, 2003-02752-COA-R3-CV, 2005 WL 697525 (Tenn. Ct. App. March 25, 2005), she had a duty to see what was in plain sight, a large black puddle of what was clearly slippery oil, and to avoid walking into it. While [the defendant parking lot owner] clearly had a duty to maintain the parking lot in a reasonably safe condition, reasonable minds would not differ because of plaintiff's absolute lack of attention to where she was walking she was at least fifty percent responsible for her fall and subsequent injury.

[*Id.*].

In *Easley v. Baker*, No. M2003-02752-COA-R3CV, 2005 WL 697525 (Tenn. Ct. App. Mar. 24, 2005), the plaintiff brought an action alleging a slip and fall in the restroom of Legend's Bar and Grill, asserting that the defendants had made no attempt to correct the wet floor in the restroom or to warn him or other patrons of the dangerous condition on the restroom floor. *Id.* at *1. The plaintiff alleged he had fallen on the wet floor upon entering the restroom. *Id.* The trial court granted the defendants' motion for a summary judgment based upon the affirmative defense of comparative fault and the Tennessee Court of Appeals affirmed stating:

> The case at bar does not present on its facts, under summary judgment standards, a difficult analysis, even if one concedes the existence of a duty. Accepting the facts in the light most favorable to the plaintiff, we have a plaintiff who is cold sober and unimpaired, and who asserts no difficulty with the lighting within the restroom. Between him and the urinal is a five-foot-wide, one-half-inch-deep

20

puddle of water on the tile floor. Sitting to his right and within the five-foot-wide puddle of water is an 18-inch tall "wet floor" sign. He walks into the water and takes "a couple of steps" in the water and reaches a point six inches from the urinal. He then slips and injures himself. He sees the urinal, but sees neither the five-foot-wide, one-half-inch-deep puddle of water nor the 18-inch tall "wet floor" sign that is in the puddle. He takes not one, but at least two steps into the one-half-inch-deep puddle of water, moving to within six inches of the urinal before he slips.

*Id.* at *7. With regard to the comparative fault analysis, the *Easley* court also stated:

The landlord had a duty to the plaintiff to either remove the water from the floor of the restroom or warn of its existence. Unless he is to be made an insurer of his premises, he performed his duty in this case. The plaintiff, likewise, had a duty to see what was in plain sight, which includes both the accumulated water and the "wet floor" sign. He likewise has a duty to use his own sense to realize that he was walking through water as by his own testimony, he took at least two full steps into the accumulated water before he slipped.

Assuming that a duty to him was breached, reasonable minds cannot differ but that plaintiff's own inattention under comparative fault principles is at least 50 percent responsible for his slipping on the floor and his resulting injuries.

*Id.* at *8.

In this instance, Plaintiff, who testified there was no problem with the lighting in the ladies' restroom, admits she saw all of the toilet paper in the handicap stall – both wet and dry – when she entered the stall to use the toilet. Plaintiff also admitted that when she leaned over the toilet to press the manual flush button she took no action and made no effort to avoid the toilet paper at the base of the toilet, although she had a duty to avoid a hazard she admitted she had clearly seen when she entered the stall. Plaintiff stated she did not attempt to avoid the toilet paper because she needed to use the facilities in the handicap stall. However, by her own admission, Plaintiff did not turn around and lean over the toilet to press the manual flush button until after she had used the facilities and had

adjusted her clothes. Assuming *arguendo* Plaintiff slipped on either the wet or dry toilet paper when she leaned over the toilet to press the manual flush button, reasonable minds would not differ that, because she took no action to avoid a hazard she clearly had observed prior to leaning over the toilet to flush it, she was at least fifty percent responsible for her fall.

## IV.     Conclusion

For the reasons stated above, Defendant's motion for a summary judgment [Doc. 16] is hereby **GRANTED** and this action will be **DISMISSED WITH PREJUDICE**.

A separate judgment will enter.

SO ORDERED.

ENTER:

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

22